EVANS v. TWIN PINES FARM DAIRY, INCORPORATED.

1. DAMAGES—CHANGE OF MILK ROUTES—WAIVER.
    Plaintiff, an independent retailer of milk, who accepted a new route from that which he had built up by his own energy and devices, and continued delivering defendant's products, waived any possible damages he may have had from being forced to change routes as claimed.

2. SAME—LOSS OF BUSINESS.
    Plaintiff, an independent retailer of milk, who was assigned smaller territory in which to operate, but received a route with no loss in amount of business, may be said to have suffered no damages as a matter of law.

3. SAME—CHANGE OF MILK ROUTES—LIST OF CUSTOMERS.
    Where, after plaintiff, an independent retailer of milk, had accepted a new route on which to sell defendant's dairy products in lieu of a former milk route which he had built up by his own energy and devices, and, upon his failure to deliver milk from defendant dairy, it sent out its own agent to deliver its own products, no damages accrued to plaintiff because of such sales since it did not use any list of customers provided it by plaintiff.

Appeal from Oakland; Doty (Frank L.), J. Submitted October 7, 1948. (Docket No. 55, Calendar No. 43,986.) Decided January 3, 1949.

Action by Bliss Evans against Twin Pines Farm Dairy, Incorporated, a Michigan corporation, and another for damages resulting when defendants took over plaintiff's milk route. Directed verdict and judgment for defendants. Plaintiff appeals. Affirmed.

*William A. Welsh,* for plaintiff.

*Berger, Manason & Kayes (Sol J. Schwartz,* of counsel), for defendants.

SHARPE, C. J. This is an action for damages for loss of customers on a milk route. Plaintiff filed a declaration in which he alleged that in 1941 or thereabouts he entered into an agreement with defendant Twin Pines Farm Dairy, Incorporated, a Michigan corporation, to deliver its milk products on his milk route which is known as the 10-mile route; that on or about May 1, 1944, defendant company forced a consolidation of plaintiff's 10-mile route so that plaintiff lost customers on the new route he was compelled to take; that during 1944, 1945, and 1946 Clifford Kelly worked as a swing man and as such knew the names and addresses of all plaintiff's customers; that on or about May 1, 1946, defendant company reduced plaintiff's route causing a loss of customers; that on Monday, June 24, 1946, after objecting to another reduction and change in his route, he was forced to purchase his products from another dairy inasmuch as defendant dairy refused to permit him to sell its products and still retain his old route; that when he attempted to deliver his new products on his route, he discovered that Clifford Kelly had already delivered the products of defendant dairy to all of plaintiff's old customers; and that as a result of such action on the part of defendants he lost practically all of his route, except for those.

customers he persuaded to return to him, to his damage in the amount of $25,000.

Defendants filed an answer to plaintiff's declaration and eventually the cause came on for trial.

At the close of plaintiff's case, defendants' counsel made the following motion:

"I move this court at this time for a directed verdict of no cause of action as to all defendants because the plaintiff has failed to establish a case under his pleadings or otherwise, entitling him to any relief as a matter of law. That under the undisputed testimony and giving the plaintiff the most favorable construction possible from the testimony he still has made out no case."

The trial court granted the motion giving as his reasons the following:

"During your absence I have given that motion very careful consideration. There is involved in this case a very nice question of law. There is no doubt about the property rights and value of a milk route. It seems in this case that the plaintiff had established a milk route. That was a property value and the defendants in this case had no right to take it away from him, except for this one reason:

"The plaintiff claims that these consolidations was a conspiracy on the part of the defendants to deprive him of his property value, but, in spite of these consolidations he continued to work for the defendants and waived all rights in my opinion to any claim of loss because of these consolidations because he continued to work for this same company after these consolidations took place. And then. what happened? Here's the serious question in this case. He quit the defendant company without notice, either verbal or written. He had this property right and defendants had no right to take it away from him, but he should have given the defendants notice of his intention to quit them. It seems from the testimony in this case that the defendants were

all ready and had the milk all ready to deliver on this particular date and the plaintiff didn't appear, so it became necessary for them to send out the swing man, so-called. Under the circumstances the defendants are not liable. They had to deliver this milk to their customers. The plaintiff didn't appear so they had to send somebody else out on the route to take care of it. If the plaintiff in the case had notified the defendants of his intention to quit and they had gone there and taken over this route, or part of it, the defendants would be liable for damages, because a milk route is a property right and cannot be taken away from anybody without damages resulting; but here in this case the plaintiff quit with no notice whatever to the defendants. Now he comes into this court in an attempt to take advantage of his own wrong, which he cannot do. So, I feel constrained in this case, much as I dislike to do so, to direct a verdict of no cause for action, the principal reason being that no notice whatever was given to the defendants and the only recourse they had left was to deliver this milk to their customers. The plaintiff evidently had been planning this for some little time because he had a connection with the Wilson Dairy to obtain milk from them. If the defendants had had any notice of his intention to quit and no responsibility to deliver milk to their customers, then a different proposition would have arisen. If they had come in after notice was given of his intention to quit and taken the people away from him, then, of course, the defendants would have been subject to damage, but, after giving this question very careful consideration and listening to the very able arguments of counsel on both sides of the case, I can see no other way than to direct a verdict in this case of no cause for action."

Subsequently, plaintiff filed a motion for a new trial upon the following grounds:

"1. Because the directed verdict of the jury therein is contrary to law.

"2. Because the directed verdict of the jury therein is based upon conclusions of law and fact which are illogical and erroneous.

"3. Because the court erred in holding that the plaintiff should have notified the defendants of his intentions to change dairies.

"4. Because the court erred in holding and ruling that the defendant, Twin Pine Farm Dairy, Inc., was under an obligation to deliver milk to the customers of the plaintiff on the morning the said plaintiff changed dairies."

The trial court denied plaintiff's motion for a new trial, whereupon plaintiff appeals.

In coming to our conclusions in this cause we have in mind that plaintiff was an independent retailer purchasing his supplies from defendant Twin Pines Farm Dairy, Inc.; that he had built up a route by his own energy and devices; and that his contract with the dairy was in the nature of an exclusive agency to sell its products. This agreement appears to have been terminable at the will of either party.

Plaintiff urges that in June or July, 1944, he was forced into taking a smaller milk route and that prior to the acceptance of the new route he was offered $4,500 for the old 10-mile route. It is to be noted that plaintiff accepted the new route and continued delivering defendant's products. We are of the opinion that plaintiff in accepting the new route waived any possible damages that he may have had. It also appears that in May, 1946, plaintiff's route was again changed to the extent that plaintiff was not able to sell the quantity of milk and milk products that he formerly sold on the old route. It appears that before plaintiff accepted the new route he went to another milk dealer and found out that he could get a supply of milk from that dealer sufficient to supply his customers. He thus had the choice of accepting the old route and serving a new product

or accepting a new route and serving the products of the Twin Pines Farm Dairy, Inc. It also appears from plaintiff's testimony that the new route assigned to him in May, 1946, gave a smaller territory in which to operate, but no loss in amount of business. Under such circumstances it cannot be said that plaintiff suffered any damages.

The record shows that on June 25, 1946, plaintiff called for his load of milk at defendant dairy and placed an order with the company for milk and milk products for the following day; that on June 26, 1946, plaintiff failed to take the milk ordered and began delivering milk from another dairy; that when this fact became known to defendant dairy, it began to solicit and deliver milk products without solicitation on the route formerly assigned to plaintiff. The problem before us is whether the delivery of milk and milk products by defendant dairy, without first apprising customers that defendant Kelly was delivering such products for the defendant dairy company and not as agent of plaintiff on the milk route operated by plaintiff, is actionable.

In *Grand Union Tea Company* v. *Dodds,* 164 Mich. 50 (31 L. R. A. [N. S.] 260), plaintiff company was a retailer of teas and like commodities. It was the owner of horses and wagons and these were put in charge of men who solicited and delivered orders. Each man had a route and called upon the patrons of the particular route. Defendant was a solicitor on one of plaintiff's routes. He was in its employ for some time and finally announced to plaintiff company that he was going to work for another company. Plaintiff company filed a bill in chancery to enjoin defendant from soliciting plaintiff's customers on the so-called tea route. We there said:

"We are of the opinion, however, that he (defendant) cannot be restrained from selling his commodi-

ties, for himself or for any employer, in any part of the city, or to any person, so long as he does not use any property belonging to the complainant, or copies thereof that were surreptitiously made."

Assuming, in the case at bar, that plaintiff was the owner of the milk route, under the above authority the defendant dairy company could not be enjoined from soliciting patrons on the route, provided it did not use a list of customers provided by plaintiff. We are also of the opinion that in the selling of its milk and milk products there was no obligation upon the dairy to inform the buyers of the milk that the commodity sold was not the property of plaintiff. It follows that if the dairy company had the right to sell its products on the route in question, no damages could accrue to plaintiff because of such sales. In view of the fact that the record is barren of evidence that defendant company used any list of customers provided it by plaintiff, the judgment is affirmed, with costs to defendants.

BUSHNELL, BOYLES, REID, NORTH, DETHMERS, BUTZEL, and CARR, JJ., concurred.